**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT NASHVILLE**

**SEPTEMBER SESSION, 1997**

FILED

December 10, 1997

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 01C01-9609-CR-00395** |
| | ) | |
| Appellee, | ) | |
| | ) | **ROBERTSON COUNTY** |
| | ) | |
| **V.** | ) | |
| | ) | **HON. ROBERT W. WEDEMYER, JUDGE** |
| **BILLY KEMP RIPPY,** | ) | |
| | ) | |
| Appellant. | ) | **(AGGRAVATED ROBBERY)** |

FOR THE APPELLANT:

**MICHAEL R. JONES**
District Public Defender

**FRED W. LOVE**
Assistant Public Defender
109 South Second Street
Clarksville, TN  37040

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**LISA A. NAYLOR**
Assistant Attorney General
2nd Floor, Cordell Hull Building
425 Fifth Avenue North
Nashville, TN  37243

**JOHN WESLEY CARNEY, JR.**
District Attorney General

**DENT MORRISS**
Assistant District Attorney General
500 South Main
Springfield, TN  37172

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# <u>OPINION</u>

The Defendant, Billy Kemp Rippy, appeals as of right following a jury trial in the Circuit Court of Robertson County where he was convicted of aggravated robbery. The trial court sentenced Defendant to thirteen (13) years as a Range II, Multiple Offender. The Defendant raises two issues on appeal: (1) the evidence was insufficient to sustain a verdict of guilty beyond a reasonable doubt; and (2) the trial court erred in sentencing him to thirteen (13) years for aggravated robbery. We affirm the judgment of the trial court.

The victim, James Roy Wilson, resided at 111 Blair Street in Springfield, Tennessee. At the time of trial, he was 61-years-old and had been confined to a wheelchair for approximately two and one-half years because of a broken hip. The victim receives a disability check once per month in the amount of $270-275. He testified that he suffers from depression and does have a drinking problem. At trial he said that he had known the Defendant for more than 20 years and that they were drinking buddies. The Defendant had been staying with Mr. Wilson for two to three weeks prior to May 1994, but did not pay rent to stay there.

On the night of the offense, the Defendant and the victim had been drinking together. Mr. Wilson testified that he drank one quart of beer and gave one quart to the Defendant, which was the only alcohol he saw the Defendant consume that evening. The victim had approximately $270 in cash in his possession because his brother-in-law had cashed his disability check for him and delivered the cash earlier that evening. The Defendant was present when Wilson's brother-in-law

brought the money. Mr. Wilson testified that the Defendant yelled, "[y]ou can't hide that money from me," and began waving a four-inch knife in his face. Wilson said that the Defendant hit him in the face three or four times and split his lip. The victim said that he was afraid of the Defendant so he gave him the money. The victim testified at trial that the Defendant also hit him in the legs with a baseball bat and slammed his head into the wall. There was some conflict in the testimony as to whether or not the victim initially told Detective Jeff White of the Springfield Police Department about these latter two acts.

The victim testified that the Defendant then said, "[y]ou won't call nobody," and he stomped on the telephone and cut the telephone cord with his knife. The Defendant said he would kill Wilson if he told anyone. Mr. Wilson testified that he knocked on his neighbor's door in the duplex, but that no one answered. Because of his physical disability and because his telephone was not operable, the victim was unable to attempt to get further help that night. The next morning, Mr. Wilson saw his acquaintance Marvin Bush walk by and he called out to him for help. After briefly speaking with the victim, Bush went to a neighbor and immediately called the police.

Detective White arrived at 111 Blair Street at approximately 8:00 a.m. after receiving the phone call from Bush. He testified that Wilson's hair was messed up and that he saw some dried blood on the right side of his mouth. He said that Wilson's face appeared to be red on the right side as well. Detective White noticed that some numbers were broken out of the telephone and that the telephone cord had been cut with a sharp object. The victim told Detective White

that he thought these events took place around 3:00 a.m., but he testified at trial that they took place between 9:00 p.m. and midnight.

Detective White obtained a warrant for the arrest of the Defendant. The Defendant was questioned on May 17, 1994, and gave a statement to police saying he was "on a lot of cocaine" the night in question and that he just could not remember what happened that night.

Marvin Bush testified for the defense, and stated that he had known the victim for practically his whole life. He often purchased liquor for Mr. Wilson even though he himself had quit drinking about six (6) months before trial. He stated that he had never known the victim and the Defendant to have had any problems with each other in the past. Bush testified that on the morning Wilson called out to him for help, that Wilson said the Defendant and another man had been in a fight at his house. Mr. Bush also testified that Wilson told him later that the Defendant did not in fact rob him. However, Bush said that he thought the victim was intoxicated when he said this. Wilson denied ever making that statement to Bush. Mr. Bush said that the victim is a truthful person and a "man of his word" unless he is drunk. Bush admitted that Wilson was very vulnerable to being robbed or attacked because of his physical condition.

The Defendant testified in his own behalf. He stated that he and the victim had been drinking buddies for fifteen (15) to twenty (20) years. The Defendant said that the evening prior to the alleged robbery, he and another man had been in a fight at Wilson's house. He claimed they fell over the coffee table and onto Wilson, and that the other man was bleeding when he left. He testified that on

-4-

the night of the robbery he was on cocaine and alcohol. He told the police, "I just don't think I could have done anything like this to him." At trial he testified that he has no memory at all of what happened on the night of the offense.

## I. SUFFICIENCY OF THE EVIDENCE

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App.), perm. to appeal denied, id. (Tenn. 1987). Nor may this court reweigh or reevaluate the evidence. Cabbage, 571 S.W.2d at 835. A jury verdict

approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. Grace, 493 S.W.2d at 476.

In order to sustain a conviction for aggravated robbery, the evidence must show that the Defendant intentionally or knowingly took property from Mr. Wilson by violence or by putting him in fear, and that this taking was accomplished with a deadly weapon. See Tenn. Code Ann. §§ 39-13-401(a) and 39-13-402(a)(1). A "deadly weapon" is defined in Tennessee Code Annotated section 39-11-106(a)(5) as:

> (A) A firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or

> (B) Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury;

Mr. Wilson testified that the Defendant had been staying with him in the weeks prior to the night in question. The Defendant was present when Mr. Wilson's brother-in-law brought him $270-275 cash from his disability check. The Defendant told the victim, "[y]ou can't hide that money from me," while waving a four-inch knife in front of his face. Mr. Wilson testified that the Defendant hit him in the face and chest and slammed his head against the wall. He also said that the Defendant hit him in the legs several times with a baseball bat. Because he was afraid of the Defendant, Mr. Wilson gave him the money. In fact, the victim testified he let Defendant have the money because he didn't want Defendant "working on me with that knife." To prevent the victim from calling for help, the Defendant stomped on the phone and cut the phone cords with the knife. Detective White's testimony supports the victim's assertions pertaining to his

physical injuries and the damaged telephone. There was sufficient evidence for a reasonable trier of fact to find that the Defendant intentionally or knowingly took money from the victim by violence or by placing the victim in fear, and that this act was accomplished with a deadly weapon.

The defendant contends that his level of intoxication negated his ability to form the specific intent necessary to commit aggravated robbery. In order for the defendant to rely upon voluntary intoxication as a defense, "there must be evidence that the intoxication deprived [him] of the mental capacity to form specific intent. . . . The determinative question is not whether [he] was intoxicated, but what was his mental capacity." Harrell v. State, 593 S.W.2d 664, 672 (Tenn. Crim. App. 1979) (citations omitted). In this regard, whether the defendant was too intoxicated to form the requisite mental state was for the jury to determine. State v. Bell, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985). The jury in the case sub judice chose not to believe that the Defendant was too intoxicated to have acted "knowingly" or "intentionally." The victim testified how the Defendant waived the knife in his face and told the victim that he could not hide the money. Further testimony was that the Defendant cut the telephone cord and stomped the telephone indicating that the Defendant was cognizant that he should take steps to be sure the victim could not promptly call for assistance. There was more than a sufficient basis for the jury to determine that Defendant was not too intoxicated to have formed the requisite mental intent.

The Defendant also contends that the testimony of Marvin Bush is more credible than the victim's testimony. Mr. Bush testified that Mr. Wilson told him that the Defendant did not in fact rob him. However, the victim denied ever

making that statement to Mr. Bush. The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). The jury in the instant case decided to believe the victim's testimony and this Court will not second-guess that determination.

For all the reasons discussed above, sufficient evidence existed for the jury to find the Defendant guilty beyond a reasonable doubt of aggravated robbery. This issue is without merit.

## II. SENTENCING

In his second issue, the Defendant argues that the trial court erred in sentencing him to thirteen years in the Department of Correction. It is the responsibility of the Defendant to have prepared a transcript of "such part of the evidence or proceeding as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). Having failed to include the transcript of the evidence at the sentencing hearing, the Defendant cannot now be heard to complain about his sentence. State v. Arnold, 719 S.W.2d 543, 546 (Tenn. Crim. App. 1986). When the record presented is incomplete or inadequate, as is the case here, we must presume the correctness of the sentence imposed by the trial court. State v. Coolidge, 915 S.W.2d 820, 826-27 (Tenn. Crim. App. 1995); Matthews, 805 S.W.2d at 784; State v. Beech, 744 S.W.2d 585, 588 (Tenn. Crim. App. 1987).

Even though the transcript of the sentencing hearing is not included in the record, our review of what is in the record adequately supports the sentence imposed upon Defendant. Aggravated robbery is a Class B felony. Tenn. Code Ann. § 39-13-402(b). Having been sentenced as a Range II Multiple Offender, the range for Defendant's sentence is not less than twelve (12) years nor more than twenty (20) years. Tenn. Code Ann. § 40-35-112(b)(2). The pre-sentence report is included in the record. From that report, it is evident that Defendant has two (2) prior convictions for third degree burglary classified as Class D felonies, which justify the sentence within Range II. Tenn. Code Ann. § 40-35-106(a)(1). In addition, the pre-sentence report shows that Defendant has forty-six (46) prior convictions for public intoxication, three (3) prior convictions for DUI, two (2) prior convictions for driving on a revoked license, one (1) prior conviction for driving on a suspended license, one (1) prior conviction for assault and battery, one (1) prior conviction for disorderly conduct, one (1) prior conviction for resisting arrest, two (2) prior convictions for failure to appear, and one (1) prior conviction for petit

larceny.  There is more than ample evidence to justify enhancement of this Range II sentence to thirteen (13) years.  Tenn. Code Ann. § 40-35-114(1).

This issue is without merit.

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:


_____
GARY R. WADE, Judge


_____
J. CURWOOD WITT, JR., Judge